IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-01782-CNS

YURIETH LUCIA MAESTRE-JIMENEZ,

      Petitioner,

v.

JUAN BALTAZAR, Warden, Aurora ICE Processing Center;
GEORGE VALDEZ, Acting Field Office Director, U.S. Immigration & Customs Enforcement, U.S. Department of Homeland Security;
TODD M. LYONS, Acting Director, U.S. Immigration & Customs Enforcement, U.S. Department of Homeland Security;
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and
TODD BLANCHE, Acting Attorney General of the United States, in their official capacities,

      Defendants.

---

**ORDER**

---

Before the Court is Petitioner Yurieth Lucia Maestre-Jimenez's Motion for Reconsideration (ECF No. 11). *See* ECF No. 12. In the motion, Petitioner asks the Court to reconsider its prior order granting Petitioner's petition for habeas corpus, ECF No. 1, and ordering that Respondents provide Petitioner—who is currently detained by Immigration and Customs Enforcement (ICE) attendant—with a bond hearing pursuant to 8 U.S.C. § 1226(a). ECF No 12 at 2–3. Instead, Petitioner argues that the Court should have granted her immediate release from immigration detention because ICE had previously released Petitioner on her own recognizance following Petitioner's arrival to

1

the United States in 2023. *Id.* Respondents filed a response brief opposing Petitioner's motion, ECF No. 14, and Petitioner subsequently filed a reply, ECF No. 16. Having considered the arguments raised in the parties' briefing, the Court DENIES the motion, ECF No. 12, for the reasons discussed below.

## I.    ANALYSIS

While the Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, Rule 54(b) states that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of judgment adjudicating all claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Paramount Pictures Corp. v. Thompson Theatres, Inc.,* 621 F.2d 1088, 1090 (10th Cir. 1980) (a motion for reconsideration falls within a court's power to revisit and amend interlocutory orders when raised before final judgment is entered) (citing Fed. R. Civ. P. 54(b)). The decision to grant or deny a motion to reconsider is committed to the court's sound discretion, *see* Trujillo *v. Bd. of Educ. of Albuquerque Public Schools*, 212 Fed.Appx. 760, 765 (10th Cir. 2007) (unpublished) (citation omitted); however, the Tenth Circuit has advised that reconsideration is generally appropriate where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice," *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted). Here, Petitioner has not met her burden of demonstrating any of the three circumstances to justify reconsideration.

As an initial matter, Petitioner takes issue with the Court's reliance on the rationale it previously articulated in *Nava Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025) and attempts to distinguish her situation from the facts of that case. Specifically, Petitioner states that unlike this case, "*Nava Hernandez* involved a noncitizen who had been continuously detained since her border encounter." ECF No. 12 at 1. But Petitioner's characterization is incorrect. As the Court stated in *Nava Hernandez*, the petitioner there had "resided [in the United States] for decades." *Hernandez*, 2025 WL 2996643, at *6 (D. Colo. Oct. 24, 2025). Thus, Petitioner's situation here is more like the *Nava Hernandez* petitioner's situation than it may have appeared to Petitioner at first glance, and the Court's analysis in that order remains applicable here.

Nevertheless, Petitioner urges the Court to reconsider its decision and order her immediate release from immigration detention (rather than a bond hearing) because her situation is more like the one described in *Singh v. Baltazar*, where the Court ordered that petitioner's immediate release. *See* ECF No. 12 at 4 (citing *Singh v. Baltazar*, --- F. Supp. 3d ---, 2026 WL 352870, (D. Colo. Feb. 9, 2026)). But in *Singh*, the petitioner represented (and respondents did not dispute) that "[i]n the years following his release, Petitioner . . . '*followed all the requirements of his release, including appearing at immigration hearings.*'" *Singh*, 2026 WL 352870, at *2 (citation omitted and emphasis added). By contrast, Petitioner here stated in her habeas petition that after she was released by ICE on own recognizance and enrolled in ICE's Intensive Supervision Appearance Program (ISAP) in 2023, she subsequently "'accumulated 39 violations' while on ISAP." ECF No.

3

1 at 2.[1] Petitioner also admits that these violations were referenced in the Form I-213 administrative warrant that ICE provided her in connection with her re-detainment in February 2026. *Id.* at 9 (citing ECF No. 1-1 at 9).[2] This admission, without more, appeared contrary to Petitioner's representation that "ICE arbitrarily and unlawfully re-detained her without demonstrating materially changed circumstances." *Id.* at 4–5. Considering all the information in the petition, the Court determined there was an "insufficient record before [the] Court" as to whether Petitioner's ISAP violations were legitimate indications of flight risk, and as a result, the Court declined to order Petitioner's immediate release. *See Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *9 (D. Colo. Oct. 22, 2025).

The arguments contained in Petitioner's motion have not convinced the Court that ordering a section 1226(a) bond hearing, rather than immediate release, was a clear error or led to manifest injustice. Indeed, as other courts it this district have found in similar circumstances, ultimately, "an immigration judge is better suited [than the Court] to consider whether Petitioner poses a flight risk and a danger to the community in this

---

[1] This admission is not only significant; it is also potentially at odds with other statements in the petition. Indeed, even though Petitioner stated that "ICE did not allege [that Petitioner has any history of] criminal conduct, attempts to abscond, missed immigration court appearances, unreported address changes, or failures to appear,'" ECF No. 1 at 16, it is clear that her purported ISAP violations were considered by ICE in connection with her re-detainment. Additionally, although Petitioner argued that the 39 ISAP violations were "likely generated" by technological issues with the ISAP software, she did not swear, or even definitively confirm, that she had *not* violated the conditions of her supervised release—only that the errors were "likely" related to technology. *Id.* at 2.

[2] The Form I-213, which Petitioner attached to her petition, states that on December 1, 2023, "[Petitioner] was enrolled in the [Alternatives to Detention (ATD)] program and was released by ICE. [Petitioner] has accumulated 39 violations while being on the ATD program and is currently not in compliance with the ATD program." ECF No. 1-1 at 9.

instance." *Id.*[3] Accordingly, the Court's order that Respondents provide Petitioner with a bond hearing pursuant to section 1226, ECF No. 11, was not clear error.

## II.    CONCLUSION

Consistent with the foregoing, Petitioner's Motion to Reconsider Order (ECF No. 11), ECF No. 12, is DENIED.

DATED this 14th day of May 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

[3] The Court acknowledges that at Petitioner's May 11, 2026 bond hearing, the immigration judge determined that Petitioner was neither a flight risk nor a danger to the community and granted her release on bond. *See* ECF No. 14-1 at 1–2. In doing so, the immigration judge noted that

> With respect to flight risk, the Department relies primarily on prior alleged violations while Respondent was in Alternatives to Detention. However, the record reflects that the majority of these incidents involved missed calls that were returned under one hour, and the remaining instances involved brief departures from an approved zone for work-related purposes, with corroborating evidence regarding technical issues with the reporting application and Respondent's demonstrated efforts to comply, including appearing in person at ICE when instructed without formal scheduling.

> Importantly, all compliance concerns were resolved upon implementation of more restrictive monitoring in November 2025, after which Respondent complied fully, including weekly in-person reporting beginning in January 2026. The Department conceded that no violations occurred after October 2025 and presented no evidence of tampering or noncompliance with the ankle monitor or tracking device.

*Id.* Many of the above facts relied on by the immigration judge were not before the Court when it analyzed the petition. Absent this additional information regarding the validity of Petitioner's 39 ISAP violations, the Court deferred the release decision to the immigration judge who is better positioned to determine whether Petitioner is a flight risk or danger to the community.